IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| JENNIFER WILLIAMS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL CASE NO. 2:22-cv-48-ECM |
| | ) | (WO) |
| ALABAMA STATE UNIVERSITY, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION and ORDER**

**I. INTRODUCTION**

Now pending before the Court is a motion for summary judgment filed by
defendants Alabama State University ("ASU") and the Board of Trustees of Alabama State
University (collectively, the "Defendants"). (Doc. 23).   Plaintiff Jennifer Williams
("Williams") alleges the Defendants violated the Equal Pay Act (Count I), the Clarke-
Figures Equal Pay Act (Count II), and Title IX (Count III).   Based on a thorough review of
the record, briefs, and applicable law, for the reasons to be discussed, the motion for
summary judgment is due to be GRANTED.

**II. JURISDICTION**

The Court has subject-matter jurisdiction over this action pursuant to
28 U.S.C. §§ 1331, 1343(a)(4).  The Court has supplemental jurisdiction of Williams' state
law claim pursuant to 28 U.S.C. § 1367(a).  The parties do not contest personal jurisdiction
or venue, and the Court concludes that venue properly lies in the Middle District of
Alabama. *See* 28 U.S.C. § 1391.

### III.  STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(a).  A "genuine" dispute of fact exists "if the record as a whole could lead a reasonable trier of fact to find for the nonmoving party." *Redwing Carriers, Inc. v. Saraland Apartments*, 94 F.3d 1489, 1496 (11th Cir. 1996).  An issue of fact is "material" if it could "affect the outcome of the case under the governing law." *Id.*  The movant bears the initial burden to identify evidence showing no genuine dispute of material fact remains, or that the non-moving party has failed to present evidence in support of some element of his case on which he bears the ultimate burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).  If the movant satisfies this burden, then the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts," and they do so by citing to particular parts of the record or by showing the cited materials do not establish the presence or absence of a genuine dispute. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); FED. R. CIV. P. 56(c)(1).  If the non-movant fails to support their version of the facts or to properly address the movant's version of the facts as required by Rule 56(c), then the court may "consider the fact undisputed for purposes of the motion." FED. R. CIV. P. 56(e)(2).

At the summary judgment stage, the Court must view all evidence in the light most favorable to the non-movant and draw all justifiable inferences from the evidence in the non-movant's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).  However,

2

"unsubstantiated assertions alone are not enough to withstand a motion for summary judgment." *Sprowl v. Mercedes-Benz U.S. Int'l, Inc.*, 815 F. App'x 473, 478 (11th Cir. 2020) (quoting *Rollins v. TechSouth, Inc.*, 833 F.2d 1525, 1529 (11th Cir. 1987)).

## IV. FACTS

### A.  Williams' Credentials

Williams began working at ASU in 2016 as the Deputy Director of Intercollegiate Athletics.  ASU competes in the Southwestern Athletic Conference ("SWAC").  Prior to coming to ASU, Williams received a Bachelor of Arts in 2004 and a master's degree in Athletic Administration in 2008.  Her first job in intercollegiate athletics was at DePaul University, where she served as the Assistant Director of Development in the Athletic Department from 2009–2012.  From 2012–2016, Williams worked as the Associate Athletic Director for Development at North Carolina A&T State University, and as the Executive Director of the Aggie Athletic Foundation, Inc.

Williams became nationally known for her ability to fundraise, which was the focus of her work from 2009–2016.  Her long-term goal, however, was to become an athletic director.  She recognized her positions at DePaul and North Carolina A&T did not equip her with the "skill sets" necessary "to be an athletic director" because she "was not able to" work "directly with money" nor oversee external relations. (Doc. 25-2 at 5). Accordingly, in 2016, she applied and received an offer to be the Deputy Athletic Director at ASU.  In that role, among other duties, Williams assisted the Athletic Director with oversight, day-to-day management of operations and sports supervision, external

management, fundraising, and served as a liaison with campus partners.  She was paid $95,000 annually.

When ASU's Athletic Director left the university in 2017, ASU's president at the time asked Williams to serve as the Interim Athletic Director.  She took the role and received a raise, bringing her salary to $125,000 annually, equal to what her predecessor made.  In July of 2018, ASU's new president, Quinton Ross ("Ross"), reappointed Williams as Interim Athletic Director at the same salary.

**B.      2018 – Williams Hired as Athletic Director**

In Fall of 2018, Williams applied to be the permanent Athletic Director at ASU. ASU's job posting at that time listed the following job requirements for the position:

> Candidates should have a minimum of a master's degree, preferably in sports management or sports administration, or an MBA, and at least five years of experience in major leadership posts in sports administration and management. The successful candidate must have thorough knowledge of NCAA rules and regulations and demonstrated experience in leadership, budgeting, and personnel management in athletics.

(Doc. 25-9 at 2).   The salary was listed as $125,000 annually.   Ross ultimately was responsible for selecting the Athletic Director, but he delegated the coordination of the selection process to his Chief of Staff, Kevin Rolle ("Rolle").   Rolle sifted through the applicants to verify they met the minimum qualifications and submitted Williams' name to Ross for consideration.   While Williams had the requisite educational degree, Rolle recognized she only had two years of "experience in the direct management administration of athletics" from her time at ASU. (Doc. 25-5 at 2).   Nonetheless, he credited her time in

4

marketing and development, which allowed Williams to meet "the minimum qualifications" for the role. (*Id.*).  Ross subsequently offered her the position of Athletic Director.

Williams accepted the position in the Fall of 2018 but requested performance incentives and a $10,000 raise from the salary listed in the job posting.  Ross approved Williams' requests, and she received a salary of $135,000 annually plus performance-based bonuses.  Each Fall during her two-and-a-half-year tenure as Athletic Director, Williams met with Ross to request raises in her salary because she was third lowest paid Athletic Director in SWAC.  She never received a raise, but she was given a one-time $5,000 re-signing bonus in 2019.  Williams enjoyed a successful tenure as ASU Athletic Director, achieving many athletic championships and program awards.

## C.    2021 – Cable Hired as Athletic Director

Williams amicably resigned her position in the Spring of 2021.  ASU began its search for a new Athletic Director, again with the search responsibilities delegated to Rolle.  This time around, Ross and Rolle decided "to hire a true executive for athletics, someone with more years of administrative experience and if possible someone with a doctoral level degree." (Doc. 25-5 at 3).  The job description remained the same as the 2018 job posting, but ASU changed the minimum requirements:

> Candidates should have a minimum of a master's degree, preferably in sports management or sports administration, an MBA or terminal degree and at least seven to ten years of experience in major leadership posts in sports administration and management.  The successful candidate must have thorough knowledge of NCAA rules and regulations and

demonstrated experience in leadership, budgeting, and personnel management in athletics.

(*Id.* at 3–4).  The salary was listed as "[n]egotiable." (*Id.* at 1).  Rolle recommended, and Ross selected, Jason Cable ("Cable") as the top candidate.

Cable received a Bachelor of Science in 2003, a master's degree in Secondary Education in 2005, and a Ph.D. in Higher Education Administration in 2019.  His work experience included one year as Associate Athletic Director at Livingstone College, a little under one year as Assistant Athletic Director for Compliance/Game Day Operations at Savannah State University, over two years as Senior Associate Athletic Director and one year as Assistant Director of Compliance at Jackson State University, four years as Assistant Vice President for Athletic Compliance and Academic Services at Alcorn State University, and two years as Senior Associate Commissioner for Administration at SWAC. Rolle noted that Cable's time as the Senior Associate Commissioner in SWAC, the athletic conference in which ASU competes, was particularly relevant to his selection.

Because the 2021 Athletic Director job posting listed the salary as negotiable, ASU and Cable went back and forth negotiating the salary.  Ross was minimally involved in this process, only offering final approval on the settled numbers.  ASU initially offered Cable the same salary as Williams:  $135,000.  Cable indicated that he could not come to ASU for that low of a salary, requesting instead $170,00 plus incentives.  Ross accepted this salary, but he accepted only some of Cable's incentive requests.  Cable's salary of $170,000 still ranked him, like Williams, as the third lowest paid Athletic Director in SWAC.

# V.  DISCUSSION

## A.    Equal Pay Act & Clarke-Figures Equal Pay Act

Williams claims the Defendants violated the Equal Pay Act of 1963 ("EPA"),
29 U.S.C. § 206(d), and the Clarke-Figures Equal Pay Act ("CFEPA"), ALA. CODE § 25-
1-30, by paying Cable more for the same job.  The EPA prohibits employers from paying
employees at different rates for the same work based on sex. 29 U.S.C. § 206(d)(1).  The
Defendants move for summary judgment on the same grounds for both claims—namely,
that they based the decision to pay Cable a higher salary on factors other than sex.  Different
salaries paid to people of another sex are permissible if the "differential [is] based on any
other factor other than sex." *Id.*  The CFEPA similarly prohibits employers in Alabama
from paying employees of another sex performing "equal work" lower wages based on sex,
"except where the payment is made pursuant to . . . [a] differential based on any factor
other than sex." ALA. CODE § 25-1-30(b)(4).  Given the near identical wording between the
EPA and the CFEPA, and that the Defendants assert the same "factor other than sex"
provision under both, the Court's EPA analysis extends to Williams' CFEPA claim.

### 1.    *The Plaintiff's* **prima facie** *case*

Courts use a burden-shifting framework to analyze sex discrimination claims
brought under the EPA. *Mulhall v. Advance Sec., Inc.*, 19 F.3d 586, 590 (11th Cir. 1994).
The plaintiff bears the initial burden of establishing a *prima facie* case of discrimination in
pay based on sex by showing "that an employer pays different wages to employees of
opposite sexes for equal work on jobs the performance of which requires equal skill, effort,

and responsibility." *Id.* (quotations and citation omitted). Williams has satisfied her burden at this stage by showing that Cables, a male, was paid a higher salary to perform the same job. For purposes of summary judgment, the Defendants do not contest that Williams makes a *prima facie* showing.

### 2. The Defendants' burden

Where, as here, the plaintiff makes a *prima facie* showing under the EPA, then the defendant "may avoid liability by proving by a preponderance of the evidence that the pay differences are based on . . . 'any other factor other than sex.'" *Steger v. Gen. Elec. Co.*, 318 F.3d 1066, 1078 (11th Cir. 2003) (quoting 29 U.S.C. § 206(d)(1)). The burden of proving a "factor other than sex" is "heavy," in that a defendant "must demonstrate that the factor of sex provided *no basis* for the wage differential." *Id.* (emphasis in original) (citations omitted). Factors "other than sex" justifying pay differentials include "unique characteristics of the same job; an individual's *experience*, training or ability; or special exigent circumstances connected with the business." *Irby v. Bittick*, 44 F.3d 949, 955 (11th Cir. 1995) (alterations adopted) (citation omitted). So long as "subjective business justifications"—such as an employee's experience, training, or ability—are not so subjective "to render them incapable of being rebutted, they are legitimate factors to be considered." *Schwartz v. Fla. Bd. of Regents*, 954 F.2d 620, 623 (11th Cir. 1991) (per curiam).

The Defendants contend that Cable's Ph.D. and experience in intercollegiate athletic administration were the factors other than sex justifying a higher salary. Williams argues,

on the contrary, that the Defendants should not have considered Cable's degree nor his experience because they were irrelevant factors to the position of Athletic Director. Cable's Ph.D., Williams points out, was in Higher Education Administration, not Athletic Administration; thus, his degree was not connected with the business at issue here. Similarly, according to Williams, Cable's work experience was insufficient to justify a higher salary because he had never worked as an Athletic Director, whereas she held that position at ASU.

Under the EPA, education and experience are "acceptable factor[s] other than sex" if they are not used as "pretext for differentiation because of gender." *Irby*, 44 F.3d at 956; *see also Miranda v. B&B Cash Grocery Store, Inc.*, 975 F.2d 1518, 1533 n.18 (11th Cir. 1992) ("Factors such as experience and education operate as a defense to liability . . . under the Act."). To support their burden, the Defendants present evidence that they relied on Cable's greater experience in intercollegiate athletic administration and his Ph.D. in setting his higher salary. Rolle stated, "Dr. Cable['s] requested . . . salary of $170,000 . . . was accepted given his terminal degree and his years of experience and serving in specific athletic administrative roles." (Doc. 25-5 at 4). Although Cable had never worked as an Athletic Director and his Ph.D. was in Higher Education Administration rather than Athletic Administration, the Defendants decided his experience and degree were relevant to the position.

In *Schwartz*, the court held that a defendant university bore its burden on EPA analysis by demonstrating by a preponderance of the evidence that pay disparity between

professors was based on factors other than sex. 954 F.2d at 623.  In that case, a male professor alleged female colleagues were paid higher than comparable male professors based on sex. *Id.* at 622.  There was undisputed evidence, however, that "the salary disparity resulted from . . . discretionary raises" based on "outstanding service to the university, administrative duties, publications, research, supervision of doctoral students, and performance." *Id.* at 623.  The court held that the university's "business justifications" for the pay difference satisfied its burden in EPA analysis because the justifications were "legitimate factors" concrete enough to permit the plaintiff to attempt to rebut them. *Id.* (citing *Fowler v. Blue Bell, Inc.*, 737 F.2d 1007, 1011 (11th Cir. 1984) (holding subjective business justifications that are capable of objective evaluation are sufficient to sustain defendant's burden of rebuttal)).

Similarly, at this stage of the burden shifting analysis, while Williams may still rebut the Defendants' assessment of Cable's credentials over hers as pretext, the Defendants need only demonstrate by the preponderance of the evidence that "sex provided no basis for the wage differential." *Steger*, 318 F.3d at 1078.  They can do so by pointing to justifiable evidence that the decision was made based on factors other than sex. *Id.*  It is undisputed that Cables had a Ph.D. while Williams only had a master's degree. (Docs. 25-19 at 1, 25-22 at 1).  Moreover, it is undisputed that Cables had over ten years of experience in intercollegiate athletic administrative roles, whereas Williams only had two years of purely administrative experience and seven years focused on fundraising and development. (*Id.*). This evidence demonstrates, by a preponderance of the evidence, that the Defendants could

have legitimately relied on Cable's higher degree and greater relevant experience to set his higher salary. *See Irby*, 44 F.3d at 956; *see also Miranda*, 975 F.2d at 1533 n.18.  Therefore, the Defendants carried their burden by presenting evidence of objective and legitimate factors other than sex for the pay differential.

**3.    *Pretext***

Because the Defendants satisfied their burden in the EPA analysis, Williams "must rebut the explanation by showing with affirmative evidence that" the stated reason is "pretextual or offered as a post-event justification for a gender-based differential." *Steger*, 318 F.3d at 1078 (quoting *Irby*, 44 F.3d at 954).  To establish pretext, Williams "must produce evidence which directly establishes discrimination, or which permits a jury to reasonably disbelieve the employer's proffered reason." *Id.* at 1079.  If she can at least "create the inference of pretext," a material issue of fact exists that must be resolved at trial. *Irby*, 44 F.3d at 954.  Williams cannot, however, "establish pretext 'by simply quarreling with the wisdom' of the defendant's proffered nondiscriminatory reason." *Reddy v. Dep't of Educ., Ala.*, 808 F. App'x 803, 810 (11th Cir. 2020) (quoting *Chapman v. AI Transp.*, 229 F.3d 1012, 1030 (11th Cir. 2000) (en banc)); *see also Hornsby-Culpepper v. Ware*, 906 F.3d 1302, 1314 (11th Cir. 2018) (holding summary judgment appropriate where employee merely "quarreled with the wisdom of [her employer's] reasons, [but] failed to point to any affirmative evidence establishing that his proffered reasons were false or a pretext for unlawful sex discrimination").  A plaintiff rebuts a legitimate "factor other than sex," such as work experience or education, if she can show

that "she had equal or more experience of the same type" as the comparator employee. *Irby*, 44 F.3d at 956.

Williams contends that she creates an inference of pretext because Cable's Ph.D. and work experience were not relevant to the role of Athletic Director.  Her degree and work experience, on the other hand, were relevant.  The Defendants argue, however, that they made the business decision that Cable's work experience and Ph.D. were highly relevant to the roll of Athletic Director, a decision with which Williams may disagree but cannot use to create the inference of gender discrimination.[1]

To support her argument that reliance on Cable's Ph.D. was pretext for sex discrimination, Williams cites *Passmore v. Kindercare Learning Centers, Inc.*, 979 F. Supp. 1413 (M.D. Ala. 1997).  In that case, an employer paid a male employee a higher salary to replace the female plaintiff as a Reconciliation Assistant. *Id.* at 1416.  Both the plaintiff and comparator employee had similar educational background:  a college degree in business. *Id.* at 1421.  The comparator, however, had no experience in reconciliation, whereas the plaintiff, in addition to the relevant degree in business, had experience working for the defendant employer in reconciliation. *Id.*  Based on the plaintiff's equivalent degree

---

[1]  To support an inference of pretext, Williams also asserts that sex-based pay disparities were common at ASU, with females historically paid less than male counterparts in equal roles. (*See* Doc. 29 at 40–41).  She lists various positions at ASU in which males replaced females at a higher salary.  However, Williams provides no evidence for the Court to compare the credentials of either the male or female employees in these examples.  Moreover, she cites to no authority holding that pattern and practice allegations can rebut a defendant's legitimate factors other than sex in an EPA case.  The Court finds that anecdotal examples of wage disparity—without details of qualifications and job requirements for the employees at issue—do not create an inference that the Defendants' gender-neutral justifications for paying Cable more than Williams were pretext for sex discrimination.

and greater relevant work experience, the court found a "material issue of fact . . . as to the relative qualifications of" the plaintiff and the comparator. *Id.*

Unlike the degrees at issue in *Passmore*, the degrees here are not comparable. Cable possessed a terminal degree; Williams possessed a master's degree. Williams' argument that Cable's Ph.D. was irrelevant to his role as Athletic Director is unconvincing. The job posting from Cable's application cycle in 2021 linked the preference for a degree "in sports management or sports administration" only to "a master's degree." (Doc. 25-17 at 2). There is no such qualifier for the Defendants' preference for "an MBA or terminal degree." (*Id.*). Moreover, Williams has not rebutted the fact that, according to the Defendants, Cable's Ph.D. was relevant to the role as an Athletic Director. Both Ross and Rolle specifically wanted the new Athletic Director to more of a "true executive . . . with more years of administrative experience and if possible someone with a doctoral level degree." (Doc. 25-5 at 3). Williams has not explained how a Ph.D. in Higher Education Administration is irrelevant to being a university's Athletic Director.

Williams next argues that reliance on Cable's work experience was pretext for sex discrimination, citing to *Collins v. Family Dollar Stores, Inc.*, 2007 WL 9712080 (N.D. Ala. Mar. 6, 2007). She contends the pay disparity was unwarranted because she had experience as an Athletic Director, whereas Cable had none. In *Collins*, a female plaintiff alleged a retail chain paid her less as a store manager than a male manager at a different store in the same chain. *Id.* at *5. The court noted that "the variances in work experience between" the plaintiff and the comparator were "minimal, at best." *Id.* at *10. The

decisionmaker setting the comparator's higher salary could not articulate how the minimal distinctions between the employees' qualifications justified variance in pay. *Id.* Consequently, the plaintiff "created a material factual dispute as to whether her experience level was so inferior that a pay differential on that basis is believable." *Id.* at *9.

However, unlike the plaintiff in *Collins*, Williams has not provided sufficient evidence to rebut the difference in experience between herself and Cable. Rolle noted that when ASU hired Williams as Athletic Director in 2018, she only had over two years of "experience in the direct management and administration of athletics"—one year as Deputy Athletic Director at ASU and a little over a year as Interim Athletic Director at ASU. (Doc. 25-5 at 2). Rolle decided to credit Williams for her experience focused exclusively on marketing and development—four years as Associate Athletic Director for Development at North Carolina A&T and three years as Assistant Director of Athletic Development at DePaul University—although that experience was not directly in the management and administration of athletics. (Doc. 25-22 at 1). Williams herself noted that she applied to be Deputy Athletic Director at ASU in 2017 because she recognized her experience up to that point was not providing her with the "skill sets" required "to be an athletic director"— namely, she had not yet "work[ed] directly with money" or "oversee[n] external" management. (Doc. 25-2 at 5).

Cable had over ten years of experience, according to Rolle, in the management and administration of intercollegiate athletics. (Doc. 25-5 at 3). This experience included over two years as Senior Associate Commissioner for Administration at SWAC, four years as

14

Assistant Vice President for Athletic Compliance and Academic Services at Alcorn State University, over two years as Senior Associate Athletic Director and one year as Assistant Director of Compliance at Jackson State University, a little under one year as Assistant Athletic Director for Compliance/Game Day Operations at Savannah State University, and one year as Associate Athletic Director at Livingstone College. (25-19 at 1–3). The Defendants placed a particular emphasis, illustrated by the antecedent job posting, on experience with NCAA rules and regulations and leadership experience, experience that Cable possessed from his work in compliance. (25-17 at 3). Williams has not rebutted the Defendants' evidence that Cable's relevant experience was a factor in paying him more than Williams. She therefore has not shown that sex, rather than the legitimate subjective business justifications offered by the Defendants, influenced the Defendants' decision to pay Cable a higher salary.

Two cases provide more factually similar scenarios than those cases offered by Williams. First, in *Shiver v. Career Consultants, Inc.*, a college hired a female plaintiff to be an Admissions Representative, even though she did not have a college degree. 142 F. Supp. 3d 1191, 1194 (M.D. Ala. 2015). Four years later, the college hired and paid a higher salary to a male Admissions Representative, who possessed a bachelor's degree and almost equivalent work experience to the plaintiff. *Id.* at 1195. The plaintiff argued that reliance on an educational degree to pay the comparator employee more than her was pretextual because the defendant college could not "explain how [the comparator's] degree served a business purpose warranting a . . . pay differential." *Id.* at 1199. The court found, however,

that the plaintiff "merely support[ed] an argument that she questions the wisdom of the reasons relied upon by" the defendant, not that the subjective business justifications themselves were pretext for sex discrimination. *Id.* Instead, pertinent to whether the plaintiff bore her EPA rebuttal burden was that the college considered "*the fact* of the degree" in deciding to set the comparator's higher salary. *Id.* at 1200 (emphasis added). There was no evidence suggesting the college's consideration of "the fact of the degree" was "pretextual or . . . a post-event justification." *Id.* Rather, the plaintiff simply had a "personal dispute with the company's stated reasons," which was insufficient to rebut the gender-neutral business justifications for variance in pay. *Id.* (citation omitted); *cf. Chapman*, 229 F.3d at 1030 (explaining courts do not second-guess an employer's business judgment absent evidence of discrimination).

Similarly, in *Irby*, a female deputy sheriff worked in the investigations division of a sheriff's department. 44 F.3d at 956. She argued that two male deputies in the division were unjustifiably paid higher salaries than she was. *Id.* However, the plaintiff deputy did not rebut evidence that the comparator deputies had more work experience than she did in that specific division. *Id.* at 957 n.14. Pertinent to the court's analysis was that the plaintiff did not rebut evidence that the employer relied on the comparators' greater experience in the investigations division as a *guideline factor* in setting the higher salaries. *Id.* The court held the work experience relied on by the employer was a justified "factor other than sex" which the plaintiff "failed to rebut adequately." *Id.* at 957.

16

Like the evidence in *Shiver* and *Irby*, there is unrebutted evidence here that the Defendants relied on Cable's education and work experience in setting his salary. The Defendants considered the same two factors in setting Williams' salary three years earlier. Rolle recognized Williams had the relevant master's degree but only two years of "experience in the direct management and administration of athletics." Nonetheless, Rolle credited Williams' "years working in marketing and development for athletics," which brought her years of experience up to nine. (Doc. 25-5 at 2). After Williams' resignation in 2021, Rolle decided to replace her with "a true executive for athletics, someone with more years of administrative experience[;] if possible someone with a doctoral level degree." (*Id.* at 3). The job posting evidenced this gender-neutral decision by listing a preference for a terminal degree and a requirement for seven to ten years of experience in athletic management or administration. (*See* Doc. 25-17 at 2). Evidence shows the Defendants selected Cable as the top candidate for the position because of his terminal degree and over ten years of executive experience in athletic administration. (*See* Doc. 25-5 at 4). Notably, Rolle placed weight on Cable's previous job as the Senior Associate Commissioner of "the conference in which ASU's athletic teams compete." (*Id.* at 3).

Like the plaintiffs in *Shiver* and *Irby*, Williams does not present evidence that undermines the credibility of the Defendants' gender-neutral business justifications. She does not create the inference that these justifications were pretextual or "post-event justification[s] for a gender-based differential." *Steger*, 318 F.3d at 1078. The 2021 job posting confirms the Defendants' preference for a candidate with a "terminal degree" and

the requirement of "at least seven to ten years of experience in major leadership posts in sports administration and management," credentials that Cable possessed. (Doc. 25-17 at 2).

Ultimately, it is immaterial whether Williams agrees with the Defendants' subjective business decision to consider Cable's Ph.D. and work experience in setting his salary. No evidence rebuts "*the fact*" that they considered Cable's higher degree and greater relevant work experience than Williams. *See Shiver*, 142 F. Supp. 3d at 1200 (emphasis added); *see also Irby*, 44 F.3d at 957 n.14. Williams' disagreement with the Defendants' business judgment "merely supports an argument that she questions the wisdom of the reasons relied upon by" them, not an argument that the consideration of the degree and experience was "pretextual or offered as a post-event justification." *Shiver*, 142 F. Supp. 3d at 1199–200 (citation omitted); *cf. Chapman*, 229 F.3d at 1030. Williams' failure to sufficiently rebut the Defendants' basis for the pay discrepancy is fatal to her EPA and CFEPA claims. The Defendants are therefore entitled to summary judgment on these claims.

**B.    Title IX**

Williams next claims the Defendants violated Title IX by paying her less than Cable. Title IX was passed as part of the Education Amendments of 1972 and "patterned after" the Civil Rights Act of 1964. *Cannon v. Univ. of Chi.*, 441 U.S. 677, 694–96 (1979). Subject to certain exceptions, the statute mandates: "No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be

18

subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a).  Title IX's purpose, derived from its text, "is to prohibit sex discrimination in education." *Adams by and Through Kasper v. Sch. Bd. of St. Johns Cnty.*, 57 F.4th 791, 811 (11th Cir. 2022).

The Eleventh Circuit has yet to decide "whether Title VII [of the Civil Rights Act of 1964] preempts Title IX when a plaintiff alleges employment discrimination on the basis of sex and Title VII affords a parallel remedy." *Heatherly v. Univ. of Ala. Bd. of Tr.*, 778 F. App'x 690, 694 (11th Cir. 2019).  However, both parties ask the Court to follow multiple district courts within this Circuit applying Title VII's analytical framework to Title IX employment discrimination claims. *See, e.g.*, *Sadeghian v. Univ. of S. Ala.*, 2018 WL 7106981, at *13 (S.D. Ala. Dec. 4, 2018); *Morris v. Wallace Cmty Coll. Selma*, 125 F. Supp. 2d 1315, 1342–43 (S.D. Ala. 2001); *Blalock v. Dale Cnty. Bd. of Educ.*, 84 F. Supp. 2d 1291, 1298 (M.D. Ala. 1999).  Therefore, regardless of whether Title VII preempts Title IX in this context, because "Title IX does not provide an analytical framework for evaluating a claim of sex discrimination in employment," the Court will apply "Title VII's substantive standards for proving discriminatory treatment under Title IX." *Grandison v. Ala. State Univ.*, 2022 WL 418689, at *5 (M.D. Ala. Feb. 10, 2022).[2]

A plaintiff may prove discrimination under Title VII, and thus, under Title IX, by either direct or circumstantial evidence. *Crawford v. Carroll*, 529 F.3d 961, 975–76 (11th

---

[2]  The Defendants do not move to dismiss Williams' Title IX claim on the basis of Title VII preemption. The Court, therefore, does not address this issue.

Cir. 2008).  A plaintiff may demonstrate circumstantial evidence of discrimination through the *McDonnell Douglas* burden-shifting framework. *See Tex. Dep't of Cmty. Affs. v. Burdine*, 450 U.S. 248, 252–53 (1981) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)).   Because Williams has not offered any direct evidence of discrimination, the Court addresses her claim under the *McDonnell Douglas* framework. *See Alvarez v. Royal Atl. Devs., Inc.*, 610 F.3d 1253, 1264 (11th Cir. 2010).

Under this framework, an employee creates a presumption of unlawful discrimination by first establishing a *prima facie* case. *See Lewis v. City of Union City*, 918 F.3d 1213, 1220–21 (11th Cir. 2019) (en banc).  If the plaintiff establishes a *prima facie* case, then the burden shifts to the defendant "to articulate a legitimate, nondiscriminatory reason for its actions." *Id.* at 1221 (citing *Burdine*, 450 U.S. at 253).  If the employer does so, then the burden returns to the employee to prove that the employer's proffered reason is pretext for unlawful discrimination. *Crawford*, 529 F.3d at 976.  At all times, the ultimate burden of persuasion remains with the plaintiff to show that the defendant intentionally discriminated against her. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 508 (1993).  In the summary judgment context, a plaintiff need only present evidence from which a reasonable trier of fact could conclude an employer intentionally discriminated against her.

### 1. *The Plaintiff's* **prima facie** *case*

Williams argues that the "same evidence which supports" her EPA claim "establishes a Title VII claim that she was discriminatorily paid." (Doc. 29 at 43).  She notes that the Eleventh Circuit recognizes "a more relaxed standard" under Title VII than

the EPA for "similarity between male and female-occupied jobs" in making a plaintiff's *prima facie* case. *Miranda*, 975 F.2d at 1529 n.15.  However, even if Williams can meet the easier *prima facie* burden under Title VII by showing that Cables, a male, was paid a higher salary than she was for the same job, her claim ultimately fails for the same reasons her EPA claims fail:  she has not provided evidence that the Defendants' proffered gender-neutral reasons for paying Cable a higher salary was pretext for unlawful sex discrimination.

### 2.     *The Defendants' burden*

At the second stage of *McDonnel Douglas* burden shifting analysis, the defendant's burden to produce a legitimate, nondiscriminatory reason for its adverse employment action is "exceedingly light." *Perryman v. Johnson Prods. Co.*, 698 F.2d 1138, 1142 (11th Cir. 1983).  Notably, this burden of production in Title VII analysis is lower than a defendant's burden under the EPA to "prov[e] by a preponderance of the evidence that the pay differences are based on . . . 'any other factor other than sex.'" *Steger*, 318 F.3d at 1078.  Just as the Defendants satisfy their burden under the EPA, they also surpass the low bar under Title VII by proffering evidence that their decision to pay Cable more was due to "legitimate, nondiscriminatory reason[s]." *See Lewis*, 918 F.3d at 1221; *see also Meeks v. Comput. Assocs. Int'l*, 15 F.3d 1013, 1019 (11th Cir. 1994) (noting the employer's "exceedingly light" burden, which requires only that it "proffer non-gender based reasons, not prove them" (quoting *Miranda*, 975 F.2d at 1529)).  Specifically, Cable's higher degree

and greater relevant experience were legitimate, nondiscriminatory reasons to pay Cable a higher salary than Williams.

### 3.    *Pretext*

Once an employer articulates legitimate, nondiscriminatory reasons for its decision, "the burden shifts back to the plaintiff to produce evidence that the employer's proffered reasons are a pretext for discrimination." *Alvarez*, 610 F.3d at 1264.  The plaintiff "cannot succeed by simply quarreling with the wisdom of [the employer's] reason," and instead "must confront the employer's seemingly legitimate reason . . . 'head on and rebut it.'" *Kidd v. Mando Am. Corp.*, 731 F.3d 1196, 1206 (11th Cir. 2013) (citations omitted). "The plaintiff can show pretext 'either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence,'" such that a rational trier of fact could disbelieve the employer's proffered nondiscriminatory reason. *Kragor v. Takeda Pharms. Am., Inc.*, 702 F.3d 1304, 1308 (11th Cir. 2012) (quoting *Burdine*, 450 U.S. at 256); *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 147–48 (2000).  To show pretext indirectly, the plaintiff "must demonstrate 'such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence.'" *Alvarez*, 610 F.3d at 1265 (citation omitted).  An employer's "reason cannot be . . . 'a pretext for discrimination' unless it is shown *both* that the reason was false, *and* that discrimination was the real reason." *Hicks*, 509 U.S. at 515 (emphasis in original).

22

Under both Title IX and the EPA, Williams must produce evidence that creates a genuine dispute of material fact as to whether the Defendants' proffered nondiscriminatory reasons for paying Cable a higher salary were pretext for sex discrimination. According to Williams, she satisfies her Title IX burden with the same evidence and arguments presented in support of her EPA claim. (Doc 43 at 53). However, as the Court found in its EPA analysis, Williams simply presents evidence that she "quarrel[s] with the wisdom of" the Defendants' reasons, not that the reasons were pretextual. *Kidd*, 731 F.3d at 1206. This is insufficient to "confront the employer's seemingly legitimate reason . . . 'head on and rebut it.'" *Id.* Absent evidence that the decision was intentionally discriminatory, the Court will not quarrel with how the Defendants choose to set their employees' salaries. *See id.*; *cf. Nix v. WLCY Radio/Rahall Commc'ns*, 738 F.2d 1181, 1187 (11th Cir. 1984) ("The employer may fire an employee for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is not for a discriminatory reason."), *abrogated on other grounds by Lewis*, 918 F.3d 1213; *Bell-Haynes v. Ala. State Univ.*, 2023 WL 2534738, at *13 (M.D. Ala. Mar. 15, 2023) ("The Court will not quarrel with ASU's decisions to grant or deny tenure absent evidence that the decisions were intentionally discriminatory.").

Accordingly, on this record, Williams has failed to demonstrate such inconsistencies in the Defendants' proffered legitimate reasons sufficient to allow a "reasonable factfinder [to] find them unworthy of credence." *See Alvarez*, 610 F.3d at 1265 (citation omitted).

Williams fails to present sufficient evidence to show a genuine dispute of fact as it pertains to pretext, and the motion for summary judgment on her Title IX claim is due to be granted.

## VI.  CONCLUSION

Accordingly, and for good cause, it is

ORDERED that the Defendants' motion for summary judgment (doc. 23) is GRANTED, and Williams' claims against the Defendants are DISMISSED.

A separate judgment will enter.

DONE this 19th day of July, 2023.

_____/s/ Emily C. Marks_____
EMILY C. MARKS
CHIEF UNITED STATES DISTRICT JUDGE